UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| ERICK MARQUIS BROWN, | ) | |
| | ) | |
| Petitioner, | ) | 2:14-cv-00194-JCM-CWH |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| BRIAN WILLIAMS, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

This is a habeas corpus proceeding under 28 U.S.C. § 2254 brought by Erick Marquis Brown, a Nevada prisoner. On June 26, 2015, respondents filed a motion to dismiss arguing that Brown's habeas petition is untimely. ECF No. 22. Alternatively, respondents argue that various claims in the petition are procedurally defaulted, unexhausted, not cognizable in this proceeding and/or barred by *Stone v. Powell*, 428 U.S. 465 (1976). ECF No. 22. This order decides that motion.

I. PROCEDURAL BACKGROUND[1]

On June 30, 2006, a jury in the state district court for Clark County, Nevada, found Brown guilty of one count of burglary while in possession of a firearm, first degree kidnaping with use of a deadly weapon (victim 65 years of age or older or resulting in substantial bodily harm), first degree kidnaping with use of a deadly weapon (resulting in substantial bodily harm), robbery with the use of

---

[1] This procedural history is derived from the exhibits located at ECF Nos. 23-32 and the court's own docket.

a deadly weapon (victim 65 years of age or older), and robbery with use of a deadly weapon.  The court entered a judgment of conviction on August 16, 2006. Brown appealed.

On September 13, 2007, the Nevada Supreme Court entered an order affirming Brown's convictions, then issued a remittitur on October 9, 2007.  On June 17, 2008, attorney Robert Langford entered a notice of appearance for Brown in the state district court, but Brown did not file a state habeas petition until October 10, 2008.  On May 22, 2009, Brown filed a supplemental petition with additional claims.  The court held an evidentiary hearing on January 27, 2012, then entered an order denying the petition on February 16, 2012.  Brown appealed.

On January 16, 2013, the Nevada Supreme Court entered an order affirming the lower court's judgment, then issued a remittitur on February 11, 2013.

Beginning on June 27, 2013, and continuing through at least April 24, 2014 (three months after initiating this federal proceeding), Brown filed numerous motions and a habeas petition in the state district court seeking relief from his judgment of conviction, all of which were unsuccessful. Between January 16, 2014, and June 12, 2014, the Nevada Supreme Court entered orders under five separate case numbers affirming the lower court's denial of relief with respect to those pleadings.[2]

On January 28, 2014, Brown initiated this federal habeas corpus proceeding.  On November 17, 2014, he filed an amended petition adding several claims (ECF No. 9-1, p. 56-149), that was docketed on May 18, 2015 (ECF No. 21).

II. DISCUSSION

1. *Timeliness.*

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) imposes a one-year filing period for § 2254 habeas petitions in federal court.  28 U.S.C. § 2244(d)(1).  The one-year

---

[2] This court also takes judicial notice of an original petition for writ of habeas corpus filed in the Nevada Supreme Court under case number 68554 on August 5, 2015.  The court entered an order denying that petition on September 11, 2015.

1  period begins to run from the latest of four possible triggering dates, with the most common being
2  the date on which the petitioner's state court conviction became final (by either the conclusion of
3  direct appellate review or the expiration of time for seeking such review). *Id.* Statutory tolling of the
4  one-year time limitation occurs while a "properly filed" state post-conviction proceeding or other
5  collateral review is pending. 28 U.S.C. § 2244(d)(2).

6  As noted above, Brown's judgment of conviction was entered on August 16, 2006. He filed a
7  timely appeal. On September 13, 2007, the Nevada Supreme Court entered an order affirming the
8  conviction. Brown had ninety days from the entry of the Nevada Supreme Court's order – *i.e.*, until
9  December 12, 2007 – to seek *certiorari* with the United States Supreme Court. *Bowen v. Roe*, 188
10 F.3d 1157, 1158-60 (9th Cir. 1999). Because he did not seek such relief, Brown's conviction became
11 final on that date for the purposes of § 2244(d). *Id*. Accordingly, Brown had until December 12,
12 2008, to file his federal habeas petition, unless the time was otherwise tolled by statute.

13 Brown filed a state habeas petition in state district court on October 10, 2008, 303 days into
14 his one year period under AEDPA. However, Nev. Rev Stat. § 34.726(1) provides that: "Unless
15 there is good cause shown for delay, a petition that challenges the validity of a judgment or sentence
16 must be filed within 1 year after entry of the judgment or conviction or, if an appeal has been taken
17 from the judgment, within 1 year after the supreme court issues its remittitur." When the Nevada
18 Supreme Court denied Brown's habeas petition on January 16, 2013, it ruled that the petition was
19 filed more than one year after issuance of the Nevada Supreme Court's remittitur on direct appeal,
20 and was therefore untimely pursuant to § 34.726(1). ECF No. 28-14. As a separate and independent
21 ground for denying relief, the court concluded that the lower court did not err in denying Brown's
22 claims on the merits. *Id*.

23 The United States Supreme Court has held that a habeas petitioner's state post-conviction
24 petition that was rejected by the state court as untimely under state law is not "properly filed" for the
25 purposes of § 2244(d)(2)'s statutory tolling provision. *Pace v. DiGuglielmo*, 544 U.S. 408, 412-16
26

1  (2005). Thus, Brown's first state post-conviction proceeding did not statutorily toll the one-year
2  filing period, which expired on December 12, 2008.

3    And, even if Brown were to be given statutory tolling credit for his first state habeas petition,
4  the one-year AEDPA period would have expired on April 14, 2013 (62 days after the issuance of the
5  Nevada Supreme Court's remittitur on February 11, 2013).[3] Thus, Brown's federal habeas petition is
6  time-barred under § 2244(d) unless he is entitled to equitable tolling.

7        2. *Equitable tolling.*

8    Equitable tolling is appropriate only if the petitioner can show:  (1) that he has been pursuing
9  his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented
10 timely filing.  *Holland v. Florida*, 130 S.Ct. 2549, 1085 (2010).  Equitable tolling is "unavailable in
11 most cases," *Miles v. Prunty*, 187 F.3d 1104, 1107 (9th Cir. 1999), and "the threshold necessary to
12 trigger equitable tolling is very high, lest the exceptions swallow the rule," *Miranda v. Castro*, 292
13 F.3d 1063, 1066 (9th Cir. 2002) (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.
14 2000)).  The petitioner ultimately has the burden of proof on this "extraordinary exclusion."
15 *Miranda*, 292 F.3d at 1065.

16   Brown identifies the following as extraordinary circumstances that warrant equitable tolling
17 for his petition:  (1) post-conviction counsel Langford's delay in filing his state habeas petition and
18 Langford's failure to advise him that the petition was not timely filed, (2) Langford's collusion with
19 the district attorney and state district court judge to deceive him that his case was "procedurally on
20 course," and (3) Langford's failure to notify him that the Nevada Supreme Court had affirmed the
21 lower court's denial of his first state habeas petition.

22   "Equitable tolling may be warranted in instances of unprofessional attorney behavior;
23 however, the AEDPA deadline will not be tolled for a garden variety claim of excusable attorney

---

25  [3]   Because April 14, 2013, fell on a Sunday, the deadline under this scenario was actually April 15, 2013.  *See* Fed. Rule Civ. P. 6(a)(3).
26

neglect or mistake." *Doe v. Busby*, 661 F.3d 1001, 1011-12 (9th Cir. 2011) (citing *Spitsyn v. Moore*, 345 F.3d 796, 800-02 (9th Cir. 2003)); *see also Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990) ("[T]he principles of equitable tolling described above do not extend to what is at best a garden variety claim of excusable neglect."). The attorney conduct must be "sufficiently egregious" to warrant equitable tolling. *Spitsyn*, 345 F.3d at 801.

In *Spitsyn*, the petitioner Spitsyn retained an attorney to assist with his federal habeas petition nearly a full year in advance of the filing deadline, but the attorney failed to prepare or file a petition despite numerous requests by both Spitsyn and Spitsyn's mother and a grievance filed with the state bar association complaining about the lack of response. *Id*. at 798. In addition, the attorney did not turn over Spitsyn's file to him until "almost three months after Spitsyn requested it, more than two months after the limitations period had run, and not until after a disciplinary investigation was commenced by the bar." *Id*.

In a more recent case, *Gibbs v. Legrand*, the Ninth Circuit held that "[f]ailure to inform a client that his case has been decided, particularly where that decision implicates the client's ability to bring further proceedings *and* the attorney has committed himself to informing his client of such a development, constitutes attorney abandonment" that warrants equitable tolling. 767 F.3d 879, 886 (9th Cir. 2014) (emphasis in original). In *Gibbs*, an attorney appointed to represent petitioner in a state post-conviction appeal abandoned the petitioner and failed to notify him that his state court petition had been denied. *Id*. at 886–88. The petitioner made numerous attempts to contact counsel to determine the status of the petition, but counsel ignored those attempts. *Id*. The petitioner did not learn that his state petition had been denied until the statute of limitations for filing a federal habeas petition had expired. *Id*. Among the facts the Ninth Circuit relied upon to find equitable tolling were that the petitioner had relied on his counsel's promise to keep the petitioner informed of the status of his case and that the petitioner consistently – albeit unsuccessfully – wrote to his counsel to obtain information about his petition. *Id*.

Turning to Brown's equitable tolling claim, this court finds that his allegations of collusion between Langford and the district attorney or the state district court judge to be far-fetched and unsubstantiated. The court also finds that even if Langford's representation of Brown is construed as attorney abandonment or egregious misconduct amounting to an extraordinary circumstance that prevented compliance with the § 2244(d)(1) deadline, Brown's petition is still untimely under Ninth Circuit precedent.

In *Luna v. Kernan*, 784 F.3d 640 (9th Cir. 2015), the Ninth Circuit explored how time is to be credited to the petitioner for purposes of equitable tolling. The court noted two different methods. Under a "stop-clock" approach, "the statute-of-limitations clock stops running when extraordinary circumstances first arise, but the clock resumes running once the extraordinary circumstances have ended or when the petitioner ceases to exercise reasonable diligence, whichever occurs earlier." *Luna*, 784 F.3d at 651 (citing *Gibbs*, 767 F.3d . at 891-92). Thus, "[u]nder a pure stop-clock approach, a petitioner needs to show diligence only during the period he seeks to have tolled – *i.e.*, the period during which the extraordinary circumstances prevented timely filing. There is no need to show diligence after the extraordinary circumstances have ended." *Id*. The court in *Luna* noted that, on the other hand, *Spitsyn* "requires a petitioner to show diligence through the time of filing, even after the extraordinary circumstances have ended." *Luna*, 784 F.3d at 651. The court then stated:

> At some point, our circuit may need to decide whether it makes sense to follow the stop-clock approach and at the same time impose a diligence-through-filing requirement. If the objective of the stop-clock approach is to give petitioners one full year of unobstructed time to prepare a federal habeas petition, a separate diligence-through-filing requirement appears to thwart that objective. However, under current circuit law, we must apply both the diligence-through-filing requirement imposed by *Spitsyn* and the stop-clock approach adopted in *Gibbs*.

*Id*. at 651-52.

Here, Brown's petition is untimely under either approach. Brown waited approximately nine months from the Nevada Supreme Court's denial of his direct appeal before retaining Langford to initiate state post-conviction proceedings. On the day Langford entered his notice of appearance in

the state district – June 17, 2008, Brown had already expended 188 days of his one-year federal filing period. Brown cannot reasonably claim that the clock should be stopped any earlier than that date.

Brown also concedes that he was notified on July 12, 2013, of the Nevada Supreme Court's affirmance of the lower court's denial of his first state habeas petition. ECF No. 38, p. 4. By that time he had initiated his campaign of filing numerous *pro se* pleadings in the state court, a clear indication that he was no longer relying on Langford to pursue relief on his behalf. Thus, the clock resumed running on July 12, 2013, and expired on January 5, 2014. He did not initiate this proceeding until January 28, 2014.

In sum, even after giving Brown the full benefit of the doubt as to the extraordinary circumstance requirement[4] *and* the *Spitsyn* diligence-through-filing requirement,[5] his petition was still late under the more lenient stop-clock approach. *Cf. Holland*, 560 U.S. at 653 ("[T]he *very day* that Holland discovered that his AEDPA clock had expired due to [his attorney's] failings, Holland prepared his own habeas petition *pro se* and promptly filed it with the District Court."). Accordingly, his federal petition is untimely and must be dismissed on that basis.

\ \ \

---

[4] In this regard, the court notes that it is granting Brown not only the presumption that Langford's conduct was sufficiently egregious to amount to an extraordinary circumstance, but also the unrealistic supposition that Langford could have filed a state habeas petition to toll the statutory period *immediately upon being retained*.

[5] On August 29, 2013, this court received from Brown a habeas petition nearly identical to the one he submitted on January 28, 2014, in this proceeding. That petition was dismissed without prejudice on September 5, 2013, due to Brown's failure to pay the filing fee or file a complete *in forma pauperis* application. *Brown v. Williams*, 2:13-cv-01574-JCM-CWH, ECF No. 2.

Brown points to that proceeding as evidence of his diligence, when, in fact, it demonstrates the opposite. For one, it shows that Brown was capable, in August 2013, of articulating the habeas claims that he later presented when he initiated this case. Second, the order dismissing the earlier proceeding included a specific warning that Brown was "responsible for calculating the running of the federal limitation period as applied to his case" and "properly commencing a timely-filed federal habeas action." *Id*., p. 2. With only the need assemble a proper *in forma pauperis* application standing in his way, Brown waited another five months to initiate the instant proceeding.

III.  CONCLUSION

Based on the foregoing, this proceeding shall be dismissed as untimely under 28 U.S.C. § 2244(d).  As the AEDPA statute of limitations determines the outcome in this action, the court does not reach respondents' alternative arguments for dismissal.

*Certificate of Appealability*

This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules Governing Section 2254 Cases requires this court to issue or deny a certificate of appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002). "[T]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a).

Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

In the present case, petitioner's habeas petition is being dismissed because it was untimely filed.  The court did not reach the merits of any of petitioner's constitutional claims because those claims are barred by the AEDPA statute of limitations.  Petitioner's habeas petition was untimely filed and petitioner has failed to demonstrate that he is entitled to equitable tolling sufficient to render his petition timely.  No reasonable jurist could conclude that this court's procedural ruling is

in error. Petitioner is not entitled to proceed further, and is not entitled to a certificate of appealability.

**IT IS THEREFORE ORDERED** that respondents' motion to dismiss (ECF No. 22) is GRANTED.  The petition for writ of habeas corpus is DISMISSED with prejudice.

**IT IS FURTHER ORDERED** that the clerk shall enter judgment accordingly.

**IT IS FURTHER ORDERED** that petitioner is denied a certificate of appealability.

**IT IS FURTHER ORDERED** that respondents' motions to strike (ECF Nos. 41/45) are DENIED.  Petitioner's motion to extend time (ECF No. 42) is GRANTED *nunc pro tunc* as of October 5, 2015.

Dated February 18, 2016.

_____
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26